**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

04 SEP 29 PM 3: 45

BRENDA G. LEGG, )
)
    Plaintiff, )
)
    vs. )    CV 01-B-2447-NW
)
WISE ALLOYS, L.L.C., )
)
    Defendant. )

**ENTERED**

SEP 2 9 2004

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 22.)[1] Plaintiff Brenda G. Legg has sued her employer, defendant Wise Alloys, L.L.C., alleging that defendant discriminated against her on the basis of her gender and her age and that it retaliated against her for complaining about discrimination. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 22), is due to be denied in part and granted in part.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met this burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. <u>STATEMENT OF FACTS</u>[2]

On April 1, 1999, Reynolds Metals Company sold its facility in Muscle Shoals, Alabama to defendant. (Pl. Evid. Ex. 2 at 33-34; Ex. 4 at 26.) At that time, defendant hired

---

[2]For purposes of summary judgment, all facts and reasonable inferences therefrom are drawn in favor of the plaintiff.

a number of former Reynolds employees, including plaintiff. (Pl. Evid., Ex. 1 at 16; Ex. 3 at 34-35.)

Plaintiff's current assignment is Scale Clerk. (Pl. Evid., Ex. 1 at 17.) As a Scale Clerk, plaintiff weighs trucks as they enter and exit the facility; her "primary responsibility . . . is to ensure . . . that the truck drivers have a full load. . . . And she signs . . . their bills and fixes up their paperwork for shipment . . . ." (Pl. Evid., Ex. 4 at 29-30.) She works at the track scale building and rides a bicycle from the warehouse to the track scale building on a daily basis. (Pl. Evid., Ex. 1 at 81, 89.) This practice was followed by plaintiff's predecessor, Wayne Ledbetter, a male. (*Id.* at 89.)

The position of Clerk, as well as the position of Chief Clerk, are hourly positions, which are included in the bargaining unit represented by the International Brotherhood of Teamsters and which are subject to the terms of the collective bargaining agreement ["CBA"] between defendant and the Teamsters. (Pl. Evid., Ex. 3 at 22-23.)

Pursuant to the terms of the CBA, defendant has the sole discretion to select the individual it deems the most qualified for the position of Chief Clerk. (Pl. Evid., Ex. 3 at 23.) Seniority is a consideration only as between two equally-qualified individuals. (*Id.* at 25.) Since purchasing the Muscle Shoals facility, defendant has filled a vacant Chief Clerk position on two occasions. (*Id.* at 37-38.) On May 30, 2000, defendant selected Danny Davenport, a male, to fill a vacant Bulk Storage Chief Clerk position, and, on October 8, 2001, it selected Tommy Cossey, a male, to fill the vacant Inventory Chief Clerk position.

3

(Pl. Evid., Ex. 3 at 38)  Plaintiff testified that she "didn't want [the] job" awarded to Davenport. (Pl. Evid., Ex. 1 at 56.)

Jody Woodward and Tim Russ, both male Supervisors in the Warehouse Department, were involved in the decision to promote Cossey; however, defendant maintains that Steve Ginn, Material Control Manager, made the decision to promote Cossey. (Def. Mem. in Supp. of Mot. for Summ. J. at 3 and n.16 (citing doc. 22, Ex. 4 at 81-82).)  All Clerks, including plaintiff, were considered for the Inventory Chief Clerk positions. (Pl. Evid., Ex. 2 at 82-83.) Russ and Woodward testified that Ginn chose Cossey based on the fact that Cossey was the best qualified for the position.  (*Id.*; Ex. 4 at 49-50.)

Woodward testified –

> . . . [Ginn] didn't even want to replace that position but [Russ and I] just kept . . . hounding him and saying [that] we think it would be good for the department if we replace it.  We did finally talk [Ginn] into going for it and we put [Cossey] in there and then [he] worked it for awhile, decided he would get out of it and . . . the position was closed.  There was another job that was deleted.

(Pl. Evid., Ex. 2 at 83.)  Russ testified, similarly, as follows:

> . . . My boss, Steve Ginn, said we didn't need the job and I felt like if we could get [Cossey] to do it, because [he] works harder than any five men put together, if we could get [him] to take the job then it would be a job worth doing.  It would be a good job for him and if he didn't take it we weren't going to fill it, we were just going to leave the position vacant.  And . . . that was the way it was going to be.

(Pl. Evid., Ex. 4 at 48-50.)

Cossey resigned the Inventory Chief Clerk position on June 3, 2002, and he returned to a Clerk position in the warehouse. (Pl. Evid., Ex. 3 at 38-39.)  After his resignation,

4

defendant eliminated the Inventory Chief Clerk position, and combined the job duties with the job duties of the Counter Chief Clerk. (Pl. Evid., Ex. 5 at 37-38.)

In February 2002, plaintiff returned to work after being absent due to illness. (Pl. Evid., Ex. 1 at 79-80.) Plaintiff requested transportation to the track scale building because she was still feeling ill and the weather was bad, but Russ refused and instructed plaintiff to ride the bicycle. (*Id*. at 80-81.) Plaintiff complained to John Misch in Labor Relations; she testified –

> I just told him that at one time I had a scooter. [Russ] had given me a scooter that they no longer used, and he had taken it away from me and put me back on the bike when other people that escorted the trucks or went anywhere out in the plant went on a scooter.
>
> . . .
>
> And that I was ill that day and that I had ridden the bike against my better judgment and I just wanted it to go on record that I had complained about it and he said he would talk to Tim Russ.

(*Id*. at 90.) Misch talked to Russ, and, afterward, Russ told plaintiff, "I can't believe you called Labor Relations on me." (*Id*. at 91.) Russ testified that, after Misch called him, he took her a scooter to use during inclement weather. (Pl. Evid., Ex. 4 at 55-56.) He also testified that he told plaintiff, "I apologize if I've offended you in any way, I certainly didn't mean to, I want you to have this scooter and you can use it . . . for inclement weather. (*Id*. at 56.) Plaintiff testified that it was possible that Russ brought her a scooter and apologized, but she does not remember it. (Pl. Evid., Ex. 1 at 91-92.)

5

Ledbetter, plaintiff's predecessor, used the bicycle to get to and from the track scales building. (*Id*. at 80-81.) Also, plaintiff testified that she did not believe that Russ made her ride the bicycle the day she was ill because she was a woman. (*Id*. at 92.) She also testified that Russ was "the best boss [she] ever had. (*Id*. at 117.)

Prior to March 2001, defendant had considered eliminating plaintiff's position. (Pl. Evid., Ex. 4 at 64.) Defendant wanted to reduce or eliminate the significant down time the Scale Clerk had between trucks, which resulted in a poor utilization of manpower, and it considered automating the job. (*Id*. at 64-65.) Russ became plaintiff's supervisor in March 2001. (*Id*. at 1, 17.) He wanted to retain plaintiff in the Scale Clerk position, and he assigned plaintiff additional duties in order to ensure her stable employment. (*Id*. at 65-66.)[3] One of the duties Russ assigned plaintiff was the duty of completing and signing bills of lading. (Pl. Evid., Ex. 1 at 115-16.) Russ was authorized to delegate this duty. (*See* Pl. Evid., Ex. 4 at 40.)

In April 1999, plaintiff told Larry Hester, Personnel Manager, that she was interested in being promoted to the position of Planner. (Pl. Evid., Ex. 1 at 58.) Under the terms of the CBA, defendant must fill a vacant Planner position with "individuals employed by the

---

[3]Russ testified that he did not want the Scale Clerk position eliminated; he stated:

> I like having her down there. She does a good job. She's an asset to the Receiving Department down there because . . . she handles things that the Receiving Department is responsible for on . . . the other side of the plant. So I have told her that the I hope . . . we get to keep the job.

(Pl. Evid., Ex. 4 at 65.)

Company in the Electrical Technician classification or the Mechanical Technician classification." (*Id.* at 65-66 and ex. 4.) Because plaintiff is not an Electrical Technician or a Mechanical Technician, she is not eligible for a Planner position under the terms of the CBA. (*Id.*)

Plaintiff alleges that two male employees, James Scoggins and Butch Richards, who were not in a skilled trade classification were placed in the position of Planner. (*Id.* at 180.) Butch Richards, a Mechanical Technician in the Pipefitters Union, was selected to fill one of the two Planner positions available since defendant Wise purchased Reynolds Metals. (Pl. Evid., Ex. 3 at 29-30.) As a Mechanical Technician, Richards was qualified for the Planner position. (*Id.* at 30.) James Scoggins, an Hourly Supervisor in the Labor Group, was not actually placed in the position of Planner, although he performed some of the duties of that position. (*Id.* at 30-31.) He ceased performing those duties in response to a grievance filed by the skilled trades unions. (*Id.* at 32-33.)

Plaintiff's rate of pay is determined by the CBA. (Pl. Evid., Ex. 1 at 130.) She does not allege she is paid less than other male Clerks. (*Id.*)

Plaintiff filed an EEOC charge in 1996 against Reynolds; the charge alleged Reynolds had denied her a promotion to a Counter Chief Clerk position on October 15, 1996, on the basis of her age and her sex. (Pl. Evid., Ex. 7 at 1 and ex. 1.) In April 2000, plaintiff discovered that the EEOC had no record of her 1996 charge. (Pl. Evid., Ex. 1 at 33.) Plaintiff filed another EEOC charge on May 12, 2000, re-alleging her discrimination claims against Reynolds and adding claims against defendant. (*Id.* at 37-38; Ex. 8.)

7

In April 2002, plaintiff filed a third EEOC charge, alleging sex discrimination and retaliation. (Pl. Evid., Ex. 6.)

## III. <u>DISCUSSION</u>

### A. TITLE VII – GENDER AND AGE DISCRIMINATION CLAIMS

#### 1. Promotion Claims

Plaintiff contends that she was not selected for the following five positions based on her gender and/or her age: (1) the 1996 Counter Chief Clerk position, (2) the 2000 Bulk Storage Chief Clerk position, (3) the 2001 Inventory Chief Clerk position, and (4) the two Planner positions filled after defendant purchased Reynolds.

Pursuant to the Age Discrimination in Employment Act, the ADEA, it "unlawful for an employer to . . . discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits an employer from discriminating against an individual because of her gender. 42 U.S.C. § 2000e-2(a). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision. That is, the [protected trait] must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000)(quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993))) (internal citations and quotations omitted).

8

### a. Successor Liability – Counter Chief Clerk Position

In her Complaint, plaintiff includes a claim based on a 1996 promotion decision made by Reynolds prior to defendant's purchase of the Muscle Shoals facility. Defendant moves the court to dismiss this claim on the ground that it is not liable for any discrimination by Reynolds prior to defendant's purchase of the Muscle Shoals facility.

The test for determining whether a successor corporation is liable for the discrimination of its predecessor requires consideration of several factors --

> The case law articulates several factors that the court must consider in determining the applicability and appropriateness of successor liability. These factors are: (1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify imposition of liability. The final factor includes such things as: (a) whether the new employer uses the same plant; (b) whether it uses the same or substantially the same work force; (c) whether it uses the same or substantially the same supervisory personnel; (d) whether the same jobs exist under substantially the same working conditions; (e) whether the successor uses the same machinery, equipment, and methods of production; and (f) whether he produces the same product. The test is fact specific and must be conducted in light of the facts of each case and the particular legal obligation which is at issue.

*Desporte-Bryan v. Bank of America*, 147 F. Supp. 2d 1356, 1362-63 (S.D. Fla. 2001); *see also Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1526 (11th Cir. 1991)(the successor corporation is not liable "if the predecessor corporation is fully able to provide relief")(citing *Brown v. Evening News Ass'n*, 473 F. Supp. 1242, 1245 (E.D. Mich. 1979)), *superseded by statute on other grounds*.

9

Defendant contends that it did not have notice of plaintiff's discrimination claim against Reynolds at the time it purchased the Muscle Shoals facility and that plaintiff could have pursued and obtained relief from Reynolds for her claim that she was denied promotion in 1996 to the Counter Chief Clerk position on the basis of her age and gender. (Def. Mem. in Supp. of Summ. J. at 16-17.) Plaintiff does not dispute defendant's contentions, and the court finds no evidence to the contrary in the record.

Therefore, defendant's Motion for Summary Judgment with regard to the 1996 promotion decision will be granted, and plaintiff's claims based on the 1996 promotion decision will be dismissed.

### b. Prima Facie Case

In order to prevail on her gender and age claims regarding the remaining alleged discriminatory promotion decisions, plaintiff must first make a prima facie showing of discrimination, which requires her to show: (1) she is a member of a protected class; (2) she was qualified and applied for promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who are not members of the protected class were promoted. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000), *cert. denied*, 121 S. Ct. 1486 (2001).

### i. Bulk Storage Chief Clerk

Defendant contends that plaintiff cannot recover for any alleged discrimination with regard to the Bulk Storage Chief Clerk promotion decision because she testified in her deposition that she did not want the position. (*See* Def. Mem. in Supp. of Sum. J. at 14

10

(citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 564 (6th Cir. 2000); *Winbush v. State of Iowa*, 66 F.3d 1471, 1486 (8th Cir. 1995); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1232 (8th Cir. 1985)).  Plaintiff has presented no evidence to explain or contradict her deposition testimony.

A plaintiff must have a "real and present interest" in the promotion decision at issue. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002), *cert. denied* 123 S. Ct. 2606 (2003).  Plaintiff may not establish a prima facie case of discrimination with regard to selection for a position she did not want.  *Id.*; *see International Broth. of Teamsters v. United States*, 431 U.S. 324, 370 n.56  (1977); *see also Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972)("To be aggrieved under this subsection [42 U.S.C. § 2000e-5(e)] a person must be able to demonstrate that he has a real, present interest in the [position].").[4]

Plaintiff testified that she did not want the Bulk Inventory Chief Clerk position filled by Davenport.  (Pl's Evid., Ex. 1 at 56, 61-62.)  Therefore, the court finds that plaintiff has not established a prima facie of discrimination with regard to that position.

Defendant's Motion for Summary Judgment will be granted and plaintiff's claims based on the Bulk Inventory Chief Clerk position will be dismissed.

---

[4]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

### ii. Inventory Chief Clerk

Defendant assumes that plaintiff can establish a prima facie case of gender discrimination with regard to this claim. (Def. Mem. in Supp. of Mot. for Summ. J. at 18.)

### iii. Planner Positions

Defendant contends that plaintiff cannot establish a prima facie case of discrimination with regard to the Planner position promotion decisions because she cannot show that she was qualified for those positions. Defendant has presented evidence that, pursuant to the CBA, the Planner position could not be filled by a member of the Teamsters Union, plaintiff's union, and was required to be filled by an Electrical Technician or a Mechanical Technician in a skilled trade[5] union. Therefore, plaintiff, a Clerk and a member of the Teamsters Union, was not qualified for the position.

Plaintiff contends that two male employees, James Scoggins and Butch Richards, who were not qualified for the position of Planner, but were nevertheless assigned to Planner positions by defendant. Scoggins, an Hourly Supervisor in the Labor Group, was not placed in the position of Planner; he performed only limited duties of the position. He did not continue to perform those duties after a grievance was filed by the skilled trades unions. Butch Richards, a former Mechanical Technician in the Pipefitters Union was selected to fill a vacant Planner position. Plaintiff contends that Richards was not an "electrician" and, therefore, he did not meet the requirements of the CBA for the Planner position. However,

---

[5]Skilled trade classifications include pipefitters, electricians, ironworkers, and machinists. (Pl. Evid., Ex. 3 at 29.)

12

the record shows that the Planner position is open to Electrical Technicians and Mechanical Technicians. Therefore, despite the fact that he was not an electrician, Richards was qualified for the Planner position pursuant to the terms of the CBA.

Based on the foregoing, the court finds that plaintiff has not established that she was qualified for the position of Planner or that defendant assigned unqualified male employees to the position. Therefore, defendant's Motion for Summary Judgment will be granted, and plaintiff's claims based on her non-selection for the Planner positions will be dismissed.

### c. Articulated Non-Discriminatory Reason

Defendant contends that it selected Cossey for the position of Inventory Chief Clerk because of his "superior qualifications for the position." (Def. Mem. in Supp. of Mot. for Summ. J. at 18.) Defendant contends that Ginn was the decision-maker for this position. (*Id.* at 20 (citing doc. 22, Ex. 4 at 81-82.) Despite this assertion, the record contains no evidence as to Ginn's reason for selecting Cossey.[6] Defendant contends that two supervisors, Russ and Woodward, recommended Cossey because they "clearly felt . . . Cossey was best qualified for the job." (*Id.* at 19.) However, Russ and Woodward's testimony regarding why they recommended Cossey is not admissible evidence of Ginn's reason for selecting him. *See Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc.*

---

[6]The record contains some evidence than Ginn was terminated before the instant action was filed. (Pl. Evid., Ex. 5 at 17, 48, 57.) However, defendant has not shown that Ginn is unavailable to testify.

*(IMPACT) v. Firestone*, 893 F.2d 1189, 1193-94 (11th Cir. 1990); *see also Jackson v. Talladega County Board of Education*, No. 99-15123, at 5-6 (11th Cir. Feb. 21, 2001).

> Defendant contends:
>
> After an exhaustive search of Eleventh Circuit precedent, counsel for [defendant] reports that there is no Eleventh Circuit case that requires [defendant] to produce affirmative evidence from the ultimate decision maker in order to obtain summary judgment in a Title VII case. The admissible evidence in the record from both Tim Russ and Jody Woodward, who were part of the decisionmaking process, is more than adequate to meet its 'exceedingly light' burden of production of its legitimate, nondiscriminatory reasoning under controlling Eleventh Circuit case law.

(Def. Supp. Mem. in Supp. of Mot. for Summ. J. at 1-2.) Also, defendant argues that Eleventh Circuit case law "place[s] the burden of obtaining evidence regarding a decisionmaker's mindset on the plaintiff, not the defendant." (*Id.* at 4.) The court finds defendant's arguments misplaced.

The Supreme Court, in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), set forth the defendant's burden of articulating a nondiscriminatory reason for the employment decision at issue. The Court held:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing *evidence* that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's *evidence* raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, **the defendant must clearly set forth, through the introduction of *admissible evidence*, the reasons for the plaintiff's rejection**. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of

14

production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.  The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Burdine*, 450 U.S. at 254-56 (internal quotations, citations, and footnotes omitted; emphasis added).

Relying on *Burdine*, the Eleventh Circuit has held that a defendant may not meet its burden of production merely by stating a reason for the decision; it must present ***admissible evidence*** that the articulated reason or reasons for the decision "were in fact the reasons for the particular challenged action." *IMPACT*, 893 F.2d at 1193-94 (quoting *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1429 (5th Cir. 1984), *cert. denied*, 474 U.S. 1054 (1986)). In other words, contrary to defendant's argument, an employer bears the burden of ***producing*** "admissible evidence" of the *decisionmaker's* reason, or "mindset," for the decision at issue; however, it does not bear the burden of ***persuading*** a jury that such articulated reason was the real reason for its decision.

In *Jackson v. Talladega Board of Education*, No. 99-15123 (11th Cir. Feb. 21, 2001),[7] an unpublished opinion,[8] the Eleventh Circuit Court of Appeals reversed a summary judgment in favor of the employer because the record did not contain evidence of the decisionmaker's reason for the challenged decision, plaintiff's termination, even though the

---

[7]The Eleventh Circuit's opinion is attached hereto.

[8]Unpublished opinions are not "binding precedent;" however, "[t]hey may be cited as persuasive authority."  Eleventh Circuit Rules, Rule 36-2.

15

record contained evidence from another employee as to why she had recommended the

challenged termination decision.  The court held:

> The district judge . . . granted summary judgment to the Board on
> Jackson's race discrimination claims. . . .  He granted summary judgment to
> the Board . . . on the grounds that Jackson was unable to establish that the
> Board's articulated, legitimate non-discriminatory reasons for terminating
> Jackson were pretextual.  The decision was error, however, because the Board
> failed to articulate a legitimate, non-discriminatory reason for Jackson's
> termination.  The district judge looked to the reasons provided by Connell
> [School Superintendent] in her recommendation to determine why the Board
> voted to terminate Jackson.
>
> > [I]t seems that Dr. Connell recommended Jackson's discharge for
> > proper reasons . . . .  While the Board's reasons for discharging plaintiff
> > may somewhat differ from those of Dr. Connell . . . [t]he Board could
> > not have acted without a recommendation of Dr. Connell.
>
> As noted above, however, Connell's reasons are irrelevant as she was
> not the decisionmaker.  The Board did not independently articulate reasons for
> its decision to terminate Jackson. . . .  Accordingly, summary judgment for the
> Board on Jackson's race discrimination claims was improperly granted.

*Id.* at 5-6 (footnote and citations omitted).  *But see Burton v. State of Ohio, Adult Parole*

*Authority*, 798 F.2d 164, 167 (6th Cir. 1986)("The district court understandably expressed

a preference for hearing directly from Mr. Harris, the actual appointing authority, but he was

unavailable to testify because of health reasons.  Testimony of the actual appointing authority

is highly desirable in a Title VII case, because through direct and cross-examination the court

may learn information bearing on the ultimate issue of intentional discrimination.  However,

the lack of such testimony and the reasons given for its unavailability may properly be

assessed by the court. . . .  [T]he production of John Severn's recommendation by Supervisor

Kostyk, bolstered by his stated reasons for the recommendation, is sufficient to satisfy the

16

Parole Authority's burden of producing a legitimate, nondiscriminatory reason for its actions."). In this case defendant has not argued that Ginn was unavailable to offer testimony in support of defendant's Motion for Summary Judgment.

Based on the foregoing, the court holds that defendant must present admissible evidence of the decisionmaker's actual reason for the challenged employment action. In this case, the record contains no evidence from the decisionmaker regarding his reasons for choosing Cossey for the Inventory Chief Clerk position; Ross and Woodward's reasons for recommending Cossey to fill the position are irrelevant as neither was the actual decisionmaker.

Because defendant has not presented admissible evidence that plaintiff was rejected or Cossey was preferred by Ginn for a legitimate, nondiscriminatory reason, its Motion for Summary Judgment as plaintiff's age and gender discrimination claims regarding the Inventory Chief Clerk position will be denied. *See Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998)("If the prima facie case remains unrebutted, therefore, the plaintiff is entitled to judgment in her favor as a matter of law, provided that the trier of fact believes the evidence put forward to establish the prima facie case.")(citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied sub nom. Combs v. Meadowcraft Co.*, 522 U.S. 1045 (1998)(citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981))).

17

## 2. Other Alleged Adverse Employment Actions

Plaintiff alleges three incidents of alleged disparate treatment: (1) unequal restroom facilities; (2) denied request for alternate transportation to the track scales building; and (3) additional job duties and responsibilities without increase in pay.

The Eleventh Circuit has held that an adverse employment action is an essential element of discrimination and retaliation claims. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001). "[T]o prove [an] adverse employment action . . . an employee must show a ***serious and material*** change in the terms, conditions, or privileges of employment." *Id.* at 1239 (emphasis in original). However, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* In other words, plaintiff must show that "a reasonable person in [her] position would have found [the decision] to be adverse under all the facts and circumstances. *Doe v. DeKalb County School District*, 145 F.3d 1441, 1453 (11th Cir. 1998). "Not everything that makes an employee unhappy is an actionable adverse employment action." *Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Among the facts and circumstances affecting whether the change is considered "adverse" are whether the change results in "lesser pay, responsibilities or prestige," and whether the change would "impede an employee's professional growth or advancement." *Dekalb County*, 145 F.3d at 1452.

### a. Bathroom Facilities

Plaintiff contends that the lack of a female-only bathroom facility in the warehouse constitutes an actionable adverse job action; she contends that the unisex bathroom in the warehouse should have been designated as a female-only bathroom. She also complains that there was no bathroom facility in the track scale building.

In April 1999, defendant converted a men's bathroom in the receiving area of the warehouse to a unisex bathroom. The door to the unisex bathroom was locked with a combination padlock on the door; plaintiff contends that she was never told the combination. (Pl. Evid., Ex. 1 at 182-83.) There was another women's bathroom in another part of the facility, but it was a considerable distance from plaintiff's work area, approximately 90 yards; the unisex bathroom was only about 10 yards from her workstation. (*Id.* at 187.) She also alleges that she complained that there was no inside lock on this bathroom; however, after she complained in 2000, a sliding lock was placed inside the door of the unisex bathroom to ensure privacy. (*Id.* at 182-83, 185.)

The court finds that plaintiff's working condition represented by the padlocked unisex bathroom is not an actionable adverse employment condition. Plaintiff testified that she did not ask her supervisor for the combination to the lock because she "just walked [270] feet to the other one." (*Id.* at 73.) She also testified she did not use the unisex bathroom because she "didn't want somebody walking in on [her]," because the unisex bathroom did not have an inside lock "until [plaintiff] complained that even though there was a person in there . . . another person could come in there." (*Id.*) Plaintiff testified that she did not ask her

19

supervisor for the combination to the lock, which was later removed, and that, as soon as she complained about the lack of an inside lock on the door, defendant installed an inside lock.

Clearly, such conditions, which were remedied as soon as plaintiff complained, cannot constitute an actionable adverse condition of plaintiff's employment. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000).

Plaintiff was assigned to the track scale building in 2001; there is no bathroom, male or female, in the track scale building. (Pl. Evid., Ex. 1 at 75, 187-88.) Therefore, even if the court were to find that the lack of a bathroom in the track scales building was an adverse condition of employment, plaintiff cannot establish that she was treated less favorably than male employees working in the track scale building, because the evidence shows that she was treated exactly the same as other male employees in the track scales building.

### b. Request for Alternative Transportation

Plaintiff complains that she was not allowed to take a Cushman scooter to the track scale building when she was sick in February 2002. The court makes no determination as to whether or not plaintiff's allegation that Russ's decision to make her ride the bicycle on that day was an adverse employment action because plaintiff testified that she does not believe that he made her ride the bike because she is a woman. (Pl. Evid., Ex. 1 at 92.)[9]

---

[9] During her deposition, defense counsel asked plaintiff if she believed "Mr. Russ made [her] ride that bike because [she is] a woman?;" to which plaintiff replied, "No." (Pl. Evid., Ex. 1 at 92.)

20

### c. Extra Responsibilities

Plaintiff contends that she was given the extra responsibility of completing certain bills of lading, without additional pay. She testified that Russ prints the form for her and "all [she has] to do is put the date, tractor, trailer, product, weight, and sign [her] name." (Pl. Evid., Ex. 1 at 149-50.) Such additional responsibility is not a material adverse change in plaintiff's working condition sufficient to support a cause of action. *See Davis*, 245 F.3d at 1244 (not an adverse employment action if change in job duties did not involve "a great deal of additional work or responsibility").

## B. EQUAL PAY CLAIM

"To establish a prima facie case under the Equal Pay Act, an employee must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998)(quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195(1974))(internal quotations omitted) "The plaintiff is not required to prove intentional discrimination, just that the employer pays unequal wages for equal work, as defined in the Act." *Mitchell v. Jefferson County Board of Education*, 936 F.2d 539, 547 (11th Cir. 1991). "[A] plaintiff need only demonstrate that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent." *Arrington*, 139 F.3d at 876 (citing *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1533 (11th Cir. 1992)).

21

"'[T]he prima facie case . . . focuses solely on the primary duties of each job, not duties that are incidental or insubstantial,' and, although formal job titles or descriptions may be considered, the controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content." *Id.* (quoting *Miranda*, 975 F.2d at 1533.)

Plaintiff contends that Russ gave her additional job duties and responsibilities, but he did not give her an increase in pay. For purposes of her EPA claim, Russ is her comparator. Plaintiff is a Clerk; Russ is a Supervisor. Their primary job duties are not substantially equal. Plaintiff has not identified any male Clerk that does substantially equal work and is paid more. Therefore, the court finds that plaintiff has failed to establish a prima facie case of a violation of the Equal Pay Act.

Defendant's Motion for Summary Judgment as to plaintiff's Equal Pay Act claim will be granted and plaintiff's Equal Pay Act claim will be dismissed.

## C. RETALIATION

In order to establish a prima facie case of retaliation in violation of Title VII, Plaintiff must establish: (1) a statutorily protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington*, 261 F.3d at 1266 (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998)(quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993)))(internal quotations

omitted).  "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff."  *Id.* (citations omitted).

Plaintiff alleges numerous incidents of protected activity, including (1) her 2000 EEOC charge; (2) her complaint in February 2002 to Misch regarding the requirement that she use the bicycle to go to the track scale building; (3) her complaints to Misch in 2002 regarding defendant's failure to promote females; and (4) her April 2002 EEOC charge.  For the reasons set forth above, the court finds that the only actionable adverse employment action in this case is the Inventory Chief Clerk promotion decision.  However, this promotion decision predates plaintiff's alleged protected activity in 2002.  Plaintiff cannot establish that defendant was motivated to deny her the promotion to Inventory Chief Clerk position in October 2001 *because of* her protected activity in 2002.  *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)(holding that plaintiff could not establish "the requisite causal nexus between [her protected] activities and an adverse employment decision" because "any protected expression on her part occurred only *after* the commencement of the adverse employment actions of which she complains." (emphasis added)).

Thus, plaintiff's retaliation claim depends upon her establishing a causal connection between her May 2000 EEOC charge and the decision to promote Cossey in October 2001.

Based on the record evidence, the court finds no causal connection between plaintiff's protected activity and the alleged adverse employment action.  The length of time between plaintiff's May 2000 EEOC complaint and Cossey's promotion in October 2001 is too great to allow an inference that the two incidents are causally related.  *Clark County School Dist. v. Breeden*, 532 U.S. 268, 274 (2001)("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citations omitted)).  "While a close temporal proximity between two events may support a finding of a causal connection between those two events," a time period of several months, "standing alone," is "insufficient to justify an inference of causation." *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. (citing, *inter alia*, *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997), internal citations omitted).  Therefore, the court finds that plaintiff has not established a prima facie case of retaliation with regard to the Cossey promotion.

Based on the foregoing, defendant's Motion for Summary Judgment with regard to plaintiff's retaliation claim will be granted, and plaintiff's sex and age discrimination claim will be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law as to all claims except plaintiff's sex and age discrimination claims based on the Inventory Chief Clerk promotion

24

decision. The court finds that defendant has failed to produce sufficient admissible evidence of its articulated reason for the Cossey promotion.[10]   Therefore, its Motion for Summary Judgment as to such claim will be denied.   An order granting in part and denying in part defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

DONE this  29th  day of September, 2004.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[10]Although on the evidence before the court the Motion for Summary Judgment is denied, the court notes that at trial defendant may offer the testimony of Ginn as to his reasons for the Cossey promotion. It also appears to the court that if liability is established, damages to the plaintiff would be limited to the time period Cossey held the Chief Clerk position, that is from October 8, 2001, when he was selected, to June 3, 2002, when he resigned. After Cossey resigned, defendant eliminated the Inventory Chief Clerk position.

**[DO NOT PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 99-15123

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 21, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-01851-CV-PT-E

ROLLEN JACKSON,

Plaintiff-Appellant,

versus

STATE OF ALABAMA STATE TENURE COMMISSION,
STATE OF ALABAMA BOARD OF EDUCATION,

Defendants,

TALLADEGA COUNTY BOARD OF EDUCATION,
PEGGY CONNELL, Superintendent of the
Talladega Board of Education in her individual and
in her official capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Alabama

(February 21, 2001)

Before TJOFLAT and BIRCH, Circuit Judges and VINING*, District Judge.

---

*The Honorable Robert L. Vining, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

PER CURIAM:

Rollen Jackson, a former welding teacher for the Talladega County Board of Education ("the Board"), appeals the district court's grant of summary judgment to the Board and School Superintendent Peggy Connell in Jackson's suit alleging race discrimination, retaliation, and violation of his First Amendment rights. We AFFIRM in part, REVERSE in part and REMAND.

## I. BACKGROUND

Jackson worked as a welding instructor at Pittard High School, a vocational school, from 1977 until his termination in November 1996. Jackson's children attended Talladega County public schools. During his employment with the Board, Jackson periodically wrote letters to school officials and Board members alleging racial discrimination within the school system in its treatment of students and Board employees. Many of Jackson's letters were personally insulting and otherwise provocative to members of the Board.

In June of 1996, Connell became the new superintendent. That September, Jackson raised concerns about student classroom safety with his principal and Connell because of what he felt were higher numbers of students generally and a higher ratio of special education students in his classes. After Jackson wrote to Connell, but before they could meet, a student in one of Jackson's welding classes

2

was burned on the arm with a welding torch.  The parties offered conflicting

testimony as to whether Jackson instructed students to weld without safety gloves or

whether he was instructed not to allow students to use gloves until they paid for the

gloves.  The parties also offered conflicting testimony about whether Jackson, in an

attempt to demonstrate that his classes were overcrowded, impermissibly distributed

to the Board confidential records (IEPs) on his special education students.

One day after the IEPs were allegedly distributed to the Board, John Ragland,

the Special Education Coordinator, drafted a memo to Connell stating that the

county's attorney felt that "this might be what we have been waiting on to move

toward taking action on Mr. Jackson."  R4-Ex.P.  One week later, Connell

recommended to the Board that Jackson be terminated for "insubordination, neglect

of duty, incompetency, and other good and just cause."  R4-Ex.F.  The Board

approved the recommendation and suspended Jackson with pay pending a hearing.

A public hearing was held at which Jackson was represented by counsel and

testified.  The Board voted to terminate Jackson's contract.  The Alabama Tenure

Commission affirmed the Board's decision.  Jackson then filed an administrative

complaint with the Equal Employment Opportunity Commission ("EEOC").  Upon

receiving his right-to-sue letter, Jackson filed suit in district court alleging that

Connell and the Board violated his First Amendment right to free speech,

discriminated against him by terminating him in violation of Title VII, 42 U.S.C.

§2000e et seq., 42 U.S.C. §§ 1981, 1981(a), and 1983, and retaliated against him

for his exercise of his First Amendment rights.  The district judge granted summary

judgment to the defendants on all counts.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment viewing the facts in the light most

favorable to the non-movant.  Harris v. Shelby Cty. Bd. of Educ., 99 F.3d 1078,

1082 (11th Cir. 1996).  Summary judgment is appropriate only if no genuine issue of

material fact remains and judgment as a matter of law is warranted.  See

FED.R.CIV.P. 56(c).  When reviewing a motion for summary judgment, the district

judge "may not make credibility determinations or weigh the evidence."  Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, ___, 120 S.Ct. 2097, 2110, 147

L.Ed.2d 105 (2000).

## III.  DISCUSSION

Jackson sued both Connell and the Board for their involvement in his

termination.  Under Alabama law, the Board is the decisionmaker regarding

termination of tenured teachers.  See Ala. Code Ann. §§ 16-24-8, 16-24-9. See also

Pratt v. Alabama State Tenure Comm'n, 394 So.2d 18, 21 (Ala. Civ. App. 1980)

("We note under the Teacher Tenure Act only the board of education has authority

to terminate a teacher's contract.  The superintendent may recommend termination, but he cannot terminate a tenured teacher.").  Summary judgment for Connell was appropriate, because she was not the decisionmaker, and any recommendation of termination was not the direct cause of Jackson's termination.  In Stimpson v. City of Tuscaloosa, 186 F.3d 1328 (11th Cir.), cert. denied, 120 S.Ct. 1555 (1999), we held that a recommendation based on discriminatory animus or other improper motive may be actionable, but only if direct causation is established.  Id. at 1331.  Here, as in Stimpson, the Board did not act as a "cat's paw" or rubber stamp approving Connell's recommendation.  See id. at 1331-32.  Rather, the Board held a hearing, took testimony from witnesses to examine the allegations stated in Connell's written recommendation, and independently decided whether or not to terminate Jackson.  Summary judgment for Connell was proper.

The district judge also granted summary judgment to the Board on Jackson's race discrimination claims.  Using the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the district judge found that Jackson had established a prima facie case of race discrimination.  He granted summary judgment to the Board, however, on the grounds that Jackson was unable to establish that the Board's articulated, legitimate, non-discriminatory reasons for terminating Jackson were pretextual.  This decision

5

was in error, however, because the Board failed to articulate a legitimate, non-discriminatory reason for Jackson's termination.  The district judge looked to the reasons provided by Connell in her recommendation to determine why the Board voted to terminate Jackson.  R2-34, at 41.

> [I]t seems that Dr. Connell recommended Jackson's discharge for proper reasons . . . .While the Board's reasons for discharging plaintiff may somewhat differ from those of Dr. Connell . . . [t]he Board could not have acted without a recommendation of Dr. Connell.

Id.

As noted above, however, Connell's reasons are irrelevant as she was not the decisionmaker.  The Board did not independently articulate reasons for its decision to terminate Jackson.[1]  Only one Board member, Joe Duncan, was deposed prior to summary judgment.  In his deposition, Duncan expressed concern that no terminable offenses were established at the hearing and that Jackson was not terminated for legitimate reasons.  See R4-Ex.BB, at 43, 46-47, 55.  Accordingly, summary judgment for the Board on Jackson's race discrimination claims was improperly granted.

---

[1] The Board issued no written findings of fact.  While not required to do so by statute, see Pratt, 394 So.2d at 22, Alabama courts have found "that it would be better practice for the board of education to make specific findings setting forth the grounds upon which it relied in terminating the teacher's contract."  Pinion v. Ala. State Tenure Comm'n, 415 So.2d 1091, 1094 (Ala.Civ.App. 1982).

Summary judgment for the Board on Jackson's First Amendment claim was also improper. The district judge found that Jackson's speech involved a matter of public concern and that Jackson's free-speech interest outweighed that of the government in efficient public service. R2-34, at 41-44. Furthermore, "Jackson's speech did in fact play a role in [the Board's] decision, based on the considerable attention given to Jackson's speech in the Termination Hearing and in defendants' briefs." Id. at 45. He nevertheless awarded summary judgment to the Board on Jackson's First Amendment claim, finding that Jackson would have been terminated even if the Board had not considered Jackson's speech as a factor.

In Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court articulated an affirmative defense, allowing a government entity to escape liability if it can establish "by a preponderance of the evidence that it would have reached the same decision . . . in the absence of the protected conduct." Id. at 287, 97 S.Ct. at 576. The Board failed to raise the Mount Healthy defense, and summary judgment on that ground was inappropriate. Furthermore, the Board has failed to articulate any reason for Jackson's termination and, therefore, cannot yet establish that Jackson would have been terminated absent his protected speech. Accordingly, summary judgment for the Board on Jackson's First Amendment claim was improper. Because summary

7

judgment for the Board on Jackson's discrimination and First Amendment claims has been reversed, summary judgment for the Board on his retaliation claim is also improper for the reasons stated above.

## IV. CONCLUSION

For the reasons stated above, summary judgment for Connell is AFFIRMED, summary judgment for the Board is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

A True Copy - Att...
Clerk.

By: _Lisa Strater_

Deputy Clerk
Atlanta, Georgia